UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**12CR 730**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | CRIMINAL NO. _____ |
| | § | |
| vs. | § | 18 USC § 2 |
| | § | 18 USC § 371 |
| YOLANDA NOWLIN, and | § | 18 USC § 641 |
| CARLA PARNELL | § | 18 USC § 1347 |
| | § | 18 USC § 1349 |
| | § | |
| | § | |
| Defendants | § | UNDER SEAL |

United States District Court
Southern District of Texas
FILED

NOV 28 2012

David J. Bradley, Clerk of Court

**Sealed**
Public and unofficial staff access
to this instrument are
prohibited by court order

UNSEALED
PER ARREST

**INDICTMENT**

THE GRAND JURY CHARGES:

### A. INTRODUCTION

At all times material to this Indictment:

### THE MEDICARE PROGRAM

1. The Medicare Program ("Medicare") was created by the Social Security Act of 1965. Medicare was a federally funded health insurance program that provided health care benefits to certain individuals, primarily the elderly, blind, and disabled. Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24 (b).

2. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS").

1

3. HHS through CMS, contracted with entities to process claims submitted by physicians and other health care providers for individuals who received benefits paid for by Medicare. These individuals were commonly referred to as "beneficiaries." Each beneficiary was given a Medicare identification number.

4. Medicare was subdivided into multiple parts. Medicare Part B covered physician's services and outpatient care, including durable medical equipment ("DME"), that was medically necessary and ordered by licensed medical doctors or other qualified health care providers. DME is equipment that is designed for repeated use and for a medical purpose.

## THE MEDICAID PROGRAM

5. Medicaid was implemented in 1967 under the provisions of Title 19 of the Social Security Act of 1965. The State of Texas and the federal government shared the cost of funding the Texas Medicaid Program. The Medicaid program helped pay for reasonable and necessary medical procedures and services provided to individuals who were deemed eligible under state low-income programs. Coverage of reasonable and medically necessary DME expenses was among the benefits available to covered individuals. Medicaid was also "a health care benefit program" as defined by Title 18, United States Code, Section 24(b).

6. The State of Texas contracted with Texas Medicaid and Healthcare Partnership ("TMHP") to process claims submitted by physicians and other health care providers for individuals who received benefits paid for by Medicaid.

7. Upon assignment of a Medicaid provider number, a current Texas Medicaid Provider Procedures manual was distributed to the provider. Updates to the procedure manual were included in the Texas Medicaid Bulletins which were distributed to the provider by TMHP and available online. The procedure manual, bulletins and updates detailed the rules and

2

regulations pertaining to services covered by Medicaid and how to appropriately bill for providing these services to recipients.

8. The Medicaid program in Texas generally paid a portion of claims originally submitted to Medicare if the patient had both Medicare and Medicaid coverage. This portion was generally 20 percent of the Medicare allowance for the billed charges, and Medicaid paid its portion if Medicare originally allowed the claim. Claims for patients who were only Medicaid recipients and not Medicare beneficiaries were submitted directly to Medicaid. The guidelines regarding payment of these claims were contained in the Provider Procedures manual given to DME providers upon enrollment in the Medicaid Program and were similar to Medicare guidelines.

9. Medicare and Medicaid required providers to keep all records necessary to fully disclose the services and supplies provided to beneficiaries and the medical necessity of those services and supplies for at least five (5) years from the date of service.

## DME SUPPLIERS AND MEDICARE BILLING PROCEDURES

10. In order to receive reimbursement from Medicare for DME equipment provided to Medicare beneficiaries, a DME supplier was required to submit an application and become an approved Medicare supplier. If the supplier met certain minimum qualifications, Medicare approved the application and the supplier was issued a unique identification number also known as a "supplier number." The DME supplier was then allowed to submit bills for services known as "claims" to Medicare for reimbursement for the cost of distributing medically necessary DME to Medicare beneficiaries.

11. Medicare permitted approved DME suppliers to submit Medicare claims on paper or electronically. Medicare required that submitted claims contain the following details: the

3

Medicare beneficiary's name and Medicare identification number; the name and unique provider identification number of the physician who ordered the service; the service that the provider provided; the date of service and the charge for the service provided. Medicare required the DME supplier to deliver the supplies to the beneficiary prior to submitting a claim for payment to Medicare.

12. In Texas, Medicare Part B was administered by Palmetto Government Benefits Administration ("Palmetto GBA") and Cigna Government Services ("Cigna GS"), which had entered into a contract with HHS and CMS to serve as the entities or "carriers" that received, processed, and paid Medicare claims for DME.

### THE DEFENDANTS

13. Defendant **YOLANDA NOWLIN**, resident of the state of Texas, formed, owned, and controlled Yellabone Medic Care Express Equipment Supply Company and Yellabone Medical Equipment, Inc. (collectively "YELLABONE") located in Bryan, Texas, in the Southern District of Texas.

14. Defendant **CARLA PARNELL**, resident of the state of Texas and the Southern District of Texas, was a managing employee of YELLABONE who was responsible for billing Medicare and Medicaid.

### B. COUNT ONE
(Conspiracy to Commit Health Care Fraud)
18 U.S.C. § 1349

15. Beginning in or about July 2003 and continuing thereafter until in or about, December 2009, in the Southern District of Texas and elsewhere, defendants,

YOLANDA NOWLIN and
CARLA PARNELL

4

did knowingly, intentionally, and willfully combine, conspire, confederate and agree with each other and other persons known and unknown to the Grand Jury to commit an offense against the United States, namely to execute and attempt to execute a scheme and artifice to defraud health care benefit programs; namely Medicare and Medicaid, and to obtain money owned by and under the custody and control of Medicare and Medicaid by means of false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items and services in violation of Title 18, United States Code, Section 1349.

## OBJECT OF THE CONSPIRACY

16. It was the object of the conspiracy for the defendants to unlawfully enrich themselves and others known and unknown to the Grand Jury, by submitting false and fraudulent claims for payment to Medicare and Medicaid, for durable medical equipment, incontinence supplies, and ostomy supplies that were not delivered to beneficiaries and were not wanted nor needed by beneficiaries and which were the product of kickbacks which were paid in order to induce the referral of beneficiaries and recipients to receive equipment and supplies.

## MANNER AND MEANS

17. The manner and means by which the defendants sought to accomplish the purpose of the conspiracy included, among other things:

18. Defendant YOLANDA NOWLIN would and did submit enrollment applications to Medicare and Medicaid under the names Yellabone Medic Care Express Equipment Supply Company and Yellabone Medical Equipment, Inc. for the submission of claims for payment to Medicare and Medicaid.

19. Defendant YOLANDA NOWLIN would and did hire CARLA PARNELL to manage the day-to-day operations of YELLABONE and to submit false claims to Medicare and Medicaid on behalf of YELLABONE.

20. Defendants and others would and did solicit Medicare and Medicaid beneficiaries and offer medical equipment at no cost to beneficiaries in order to obtain orders for unnecessary equipment.

21. Defendants would and did pay kickbacks to F.B., V.J., and others to solicit and refer Medicare and Medicaid beneficiaries to YELLABONE.

22. Defendants would and did submit and cause to be submitted claims to Medicare and Medicaid for medical equipment that was not delivered, had not been ordered, was not medically necessary, and would not be used by the Medicare or Medicaid beneficiary.

23. Defendants would and did submit and cause to be submitted claims for ostomy supplies, which are intended for use by patients with a surgically created opening in the body for the discharge of body wastes. This product was not needed and not requested by the Medicare or Medicaid beneficiary.

24. Defendants would and did submit and cause to be submitted claims for motorized wheelchairs when a less expensive scooter was provided to the Medicare or Medicaid beneficiary.

25. Defendants would and did submit and cause to be submitted claims for diapers that were larger and more expensive than the diapers needed by the Medicare or Medicaid beneficiary.

26. Defendants would and did submit and cause to be submitted claims to Medicare and Medicaid based on orders which were altered by the addition of unauthorized equipment after the physician had signed the original order.

19. Defendant YOLANDA NOWLIN would and did hire CARLA PARNELL to manage the day-to-day operations of YELLABONE and to submit false claims to Medicare and Medicaid on behalf of YELLABONE.

20. Defendants and others would and did solicit Medicare and Medicaid beneficiaries and offer medical equipment at no cost to beneficiaries in order to obtain orders for unnecessary equipment.

21. Defendants would and did pay kickbacks to F.B., V.J., and others to solicit and refer Medicare and Medicaid beneficiaries to YELLABONE.

22. Defendants would and did submit and cause to be submitted claims to Medicare and Medicaid for medical equipment that was not delivered, had not been ordered, was not medically necessary, and would not be used by the Medicare or Medicaid beneficiary.

23. Defendants would and did submit and cause to be submitted claims for ostomy supplies, which are intended for use by patients with a surgically created opening in the body for the discharge of body wastes. This product was not needed and not requested by the Medicare or Medicaid beneficiary.

24. Defendants would and did submit and cause to be submitted claims for motorized wheelchairs when a less expensive scooter was provided to the Medicare or Medicaid beneficiary.

25. Defendants would and did submit and cause to be submitted claims for diapers that were larger and more expensive than the diapers needed by the Medicare or Medicaid beneficiary.

26. Defendants would and did submit and cause to be submitted claims to Medicare and Medicaid based on orders which were altered by the addition of unauthorized equipment after the physician had signed the original order.

27. Defendants would and did falsely indicate that equipment had been provided on a date different than actually provided, for the purposes of obtaining payment from Medicare and Medicaid prior to delivery.

28. Defendant YOLANDA NOWLIN would and did enroll in the Electronic Data Interchange program in order to submit claims to Medicare electronically.

29. Defendant YOLANDA NOWLIN would and did receive payments from Medicare and Medicaid via electronic funds transfer to First National Bank account *3010, First Convenience Bank account *9311, and First Bank of Snook account *0123.

30. Defendants would and did submit and cause to be submitted approximately $3,391,771.90 in false and fraudulent claims to Medicare and Medicaid between 2003 and 2009, for durable medical equipment and received approximately $1,108,316.82 as payment for these claims.

31. Defendants would and did use proceeds of the Medicare and Medicaid fraud to pay unlawful kickbacks, pay other operating expenses, and enrich themselves.

## OVERT ACTS

32. In furtherance of the conspiracy, and to effect the objects thereof, the defendants aided and abetted by others known and unknown to the Grand Jury, performed and caused to be performed, among others, the overt acts set forth herein and then re-alleged and incorporated in Counts Two through Five of this Indictment.

33. On or about August 20, 2004, defendants caused Medicaid to be billed for a hospital bed for Medicaid beneficiary J.B. that was not provided.

34. On or about November 29, 2004, defendants caused Medicaid to be billed for a special sized wheelchair for Medicaid beneficiary J.B. that was not provided.

35. On or about May 8, 2006, defendants caused Medicaid to be billed for a power wheelchair for Medicaid beneficiary L.C. that was not provided.

36. On or about December 2, 2008, defendants placed in R.B.'s patient file a physician's order that was altered by the addition of equipment not authorized by the treating physician.

37. On or about February 2, 2009, defendants placed in L.C.'s patient file a physician's order that was altered by the addition of equipment not authorized by the treating physician.

All in violation of Title 18, United States Code, Section 1349.

### C. COUNTS TWO THROUGH FIVE
(Health Care Fraud)
18 U.S.C. §§ 1347 and 2

38. The Grand Jury re-alleges and incorporates by reference as if fully alleged herein paragraphs 1 through 14 of Count One of this Indictment.

39. Beginning in or about July 2003 and continuing thereafter to in or about December 2009, in the Southern District of Texas and elsewhere,

YOLANDA NOWLIN and
CARLA PARNELL

each aiding and abetting each other and others known and unknown to the Grand Jury, did knowingly and willfully, execute and attempt to execute a scheme and artifice to defraud health care benefit programs, namely the Medicare and Medicaid Programs, and to obtain money owned by and under the custody and control of Medicare and Medicaid by means of false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items, and services.

## OBJECT OF THE SCHEME AND ARTIFICE

40. It was an object of the scheme and artifice to defraud to unlawfully enrich the defendants and others known and unknown to the Grand Jury, by submitting false and fraudulent claims for payment to Medicare and Medicaid, for durable medical equipment, incontinence supplies, and ostomy supplies that were not delivered to beneficiaries and were not wanted nor needed by beneficiaries and which were the product of kickbacks which were paid in order to induce the referral of beneficiaries and recipients to receive equipment and supplies.

## MANNER AND MEANS OF THE SCHEME AND ARTIFICE TO DEFRAUD

41. The Grand Jury re-alleges and incorporates by reference as if fully alleged herein the Manner and Means alleged in paragraphs 17 through 31 of Count One of this Indictment.

## EXECUTION OF THE SCHEME AND ARTIFICE TO DEFRAUD

42. On or about the dates specified as to each count below, in the Southern District of Texas and elsewhere, the defendants YOLANDA NOWLIN and CARLA PARNELL, aided and abetted by others known and unknown to the Grand Jury, did execute and attempt to execute the aforesaid described scheme and artifice to defraud Medicare and Medicaid, by submitting and causing to be submitted false and fraudulent claims as set forth below:

| Count | Name | Medicare/ Medicaid Claim No. | Item Billed | Approx. Date of Claim | Approx. Amount Billed | Approx. Amount Paid | Nature of Falsity, Included but Not Limited to |
|---|---|---|---|---|---|---|---|
| 2 | R.B. *2510 A | 835170472600 | Power Wheelchair | 12-16-08 | $5,000.00 | $3,218.96 (Medicare) $804.74 (Medicaid) | Delivered scooter |
| 3 | L.C. *0884 | 200926158555451 | Ostomy Supplies | 9-18-09 | $600.00 | $593.00 (Medicaid) | Did not deliver |

9

| 4 | C.W. *9707 | 200912723398526 | Incontinence Supplies | 5-7-09 | $436.50 | $310.50 (Medicaid) | Did not deliver |
| 5 | A.T. *1900 | 200813530186755 | Incontinence Supplies | 5-14-08 | $435.00 | $265.50 (Medicaid) | Did not deliver |

All in violation of Title 18, United States Code, Sections 1347 and 2.

### D. COUNT SIX
### (Conspiracy to Violate the Anti-Kickback Statute)
### 18 U.S.C. § 371

43. The Grand Jury re-alleges and incorporates by reference as if fully alleged herein paragraphs 1 through 14 of Count One of this Indictment.

44. Beginning in or about July 2003 and continuing thereafter to in or about December 2009, in the Houston Division of the Southern District of Texas and elsewhere,

YOLANDA NOWLIN and
CARLA PARNELL

did knowingly, intentionally and willfully combine, conspire, confederate and agree with each other and other persons known and unknown to the Grand Jury to commit and abet certain offenses against the United States, namely to violate the Anti-Kickback statute by knowingly and willfully offering and paying remuneration, including any kickback, directly or indirectly, overtly or covertly, in cash or in kind to induce the referral of Medicare and Medicaid beneficiaries for the furnishing and arranging for the furnishing of any item or service for which payment may be made in whole or in part under the Medicare or Medicaid program, in violation of Title 42 U.S.C. § 1320a-7b(b)(2)(A).

## OBJECT OF THE CONSPIRACY

45. It was the object of the conspiracy for the defendants to unlawfully enrich themselves and others known and unknown to the Grand Jury, by submitting false and fraudulent claims for payment to Medicare and Medicaid, for durable medical equipment, incontinence supplies, and ostomy supplies that were not delivered to beneficiaries and were not wanted nor needed by beneficiaries and which were the product of kickbacks which were paid in order to induce the referral of beneficiaries and recipients to receive equipment and supplies.

## MANNER AND MEANS OF THE SCHEME AND ARTIFICE TO DEFRAUD

46. The Grand Jury re-alleges and incorporates by reference as if fully alleged herein the Manner and Means alleged in paragraphs 17 through 31 of Count One of this Indictment.

## OVERT ACTS

47. In furtherance of the conspiracy, and to effect the objects thereof, the defendants aided and abetted by others known and unknown to the Grand Jury, performed and caused to be performed, among others, the overt acts as set forth below:

| Recipient | Beneficiary | Beneficiary Medicare No. | Approximate Date of Payment | Approximate Amount |
|---|---|---|---|---|
| F.B. | L.S | *0846A | 4-15-08 | $ 77.00 |
| F.B. | M.B. | *0503A | 4-15-08 | $ 28.88 |
| V.J. | A.T. | *1900 | 12-27-07 | $ 31.50 |
| V.J. | C.W. | *9707 | 12-27-07 | $ 31.50 |

All in violation of Title 18, United States Code, Section 371.

### F. COUNT SEVEN
### (Social Security Fraud)
### Theft: 18 U.S.C. §§ 641 and 2

46. The Grand Jury re-alleges and incorporates by reference as if fully alleged herein the Introduction contained in paragraphs 1 through 14 of Count One of this Indictment.

47. Beginning in or about March 2005 and continuing without interruption until in or about February 2011, in the Southern District of Texas and elsewhere,

YOLANDA NOWLIN and<br>CARLA PARNELL

each aiding and abetting each other and others known and unknown to the Grand Jury, did embezzle, steal, and purloin money of the Social Security Administration ("SSA"), a department or agency of the United States, namely, Social Security Disability Benefit payments made to CARLA PARNELL to which both CARLA PARNELL and YOLANDA NOWLIN knew CARLA PARNELL was not entitled, having a value of approximately $106,492.10.

All in violation of Title 18 United States Code, Sections 641 and 2.

### G. FORFEITURE NOTICE
### (18 U.S.C. §§ 981(a)(1)(C), 982(a)(7))

48. Pursuant to Title 18, United States Code, Section 982(a)(7), the United States gives notice to defendants,

YOLANDA NOWLIN and<br>CARLA PARNELL,

that upon conviction for a violation of Title 18, United States Code, Sections 1347, and 1349 offenses related to a federal health care offense, all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense shall be forfeited to the United States.

49. Pursuant to Title 18, United States Code, Section 981(a)(1)(C), as incorporated by 28 U.S.C. § 2461(c), the United States give notice to defendants,

YOLANDA NOWLIN and<br>CARLA PARNELL,

that upon conviction for a violation of Title 18, United States Code, Section 641, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense, shall be forfeited to the United States.

## MONEY JUDGMENT

50. Defendants are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture, which is the amount of at least $1,214,808.92.

## SUBSTITUTE ASSETS

51. In the event that the property subject to forfeiture, is a result of any act or omission by any defendant,

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred, or sold to, or deposited with a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intention of the United States to seek forfeiture of any other property of the defendants up to the value of such property, pursuant to Title 21, United States Code, Section 853(p),

incorporated by reference in Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b)(1).

                                        A TRUE BILL:
                                        Original Signature on File

                                        **Original Signature on File**
                                        FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

*[signature]*
ADRIENNE E. FRAZIOR
SPECIAL ASSISTANT U.S. ATTORNEY
U.S. ATTORNEY'S OFFICE