THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL NO 12-cr-000730 |
| | § | |
| YOLANDA NOWLIN | § | |

### DEFENDANT YOLANDA NOWLIN'S MOTION FOR NEW TRIAL

NOW COMES **YOLANDA NOWLIN**, Defendant herein, and pursuant to the Federal Rules of Criminal Procedure Rule 33 timely files his Motion for New Trial and would say unto the Court the following:

### SUMMARY OF THE ARGUMENT FOR NEW TRIAL

A new trial should be granted for Defendant YOLANDA NOWLIN as:

A. The evidence of Safe Harbor was sufficient for the Court to present a Safe Harbor instruction to the jury in the Court's charge.

B. As the Government, over defense objections, used the term "kickbacks" in the Jury Instructions, as accepted by the Trial Court, rather than the term "illegal renumeration," a judgment of acquittal should be entered as to Count 6, and a new trial granted as to all other counts.

C. As there is insufficient evidence that Defendant had the willful intent required, particularly in her diminished mental status, that a new trial be granted.

D. By removing from evidence the illegal renumeration exception exhibits, Defense Exhibits 18 and 19, after their use before the jury and not instructing the jury over Safe Harbor, the jury could have taken same as a ruling by the Court against Safe Harbor and that carried over into deliberation as to willful intent of Defendant.

E. The evidence was insufficient, particularly as the testimony of Carla Parnell as to the knowledge and participation of Ms. Nowlin is uncorroborated.

F. The Prosecutor at trial infringed upon Defendant's 5th and 6th Amendment rights, especially the right not to testify at trial.

G. The Government infringed upon the defense by contact with a defense witness, Ms. Linda Binford, who would have testified to Carla Parnell getting billing codes from Ms. Binford.

H. The jury could have misapplied the Court's Pinkerton instruction over conspiracy and substantial counts to Count 7.

I. The allowance of summary charts by the Government that not only were not tendered pre-trial to the defense, but which on one occasion the tendered version was the only copy available, and which on another occasion still had the agent's notes on the chart as submitted to the jury.

J. As the Court denied Defendant's proffered jury instructions over good faith, multiple conspiracies, violation of regulations not being a violation of criminal law, witness with a criminal history, and Safe Harbor, a new trial should be granted.

K. As Count 6 is a lesser included offense of Count 1, either the Government should select one or the other for sentencing, or a new trial should be granted.

L. As the Court did not allow Daubert hearings, a new trial should be granted.

M. Defendant urges that the "kickback" statute as applied to her is unconstitutional.

### A. EVIDENCE SUFFICIENT FOR JURY INSTRUCTION OVER SAFE HARBOR

### (1) HISTORY

The following history of the law of illegal remuneration comes directly from the article FRANKLIN T. PYLE, III, The Federal Anti-Kickback Statute Has No Preemptive Power, or Does It? Florida's Supreme Court Holds Florida's Medicaid Anti-Kickback

Statute Unconstitutional, 112 Penn.St.L.Rev. 631, Fall 2007. Without the cites the article states:

> "A. Overview of the Federal Anti-Kickback Statute
>
> 1.  Development of 42 U.S.C. § 1320a-7b(b)
>
> Congress enacted the federal anti-kickback statute as part of the Social Security Amendments of 1972. Prior to 1972, the antifraud section of the Social Security Act regulated Medicaid fraud, and was not specific to kickback activity. With the Social Security Amendments of 1972, however, Congress explicitly prohibited soliciting, offering, or receiving any kickback in connection with a Medicare or Medicaid payment. A *mens rea* requirement did not exist, and statute violators could be found guilty of a misdemeanor.
>
> Several issues regarding interpretation of the federal anti-kickback statute arose shortly after its enactment in 1972. One significant issue that caused a split among circuit courts was what type of transaction constituted a kickback, bribe, or rebate. In order to strengthen the government's ability to prosecute Medicare and Medicaid fraud, as well as to address certain interpretation issues, Congress passed the Medicare and Medicaid Anti-Fraud and Abuse Amendments of 1977. These amendments replaced the terms kickback, bribe, and rebate with the broader phrase "any remuneration (including any kickback, bribe, or rebate)." In addition, the amendments increased the maximum penalties available under the statute. While expanding the remuneration terms and penalties, the 1977 amendments also narrowed the federal anti-kickback statute by excluding discounts and other price reductions disclosed to the government, as well as excluding payments made to an employee as part of a bona fide employment relationship.
>
> Congress was concerned that the increased criminal penalties could be imposed for inadvertent activity because a *mens rea* requirement did not exist, and the term "any remuneration" could be construed very broadly. Therefore, in 1980, Congress amended the federal anti-kickback statute by adding a *mens rea* requirement. In order to be convicted of violating the federal anti-kickback statute after the 1980 amendment, a person must

commit the violative act "knowingly and willfully." In 1987, Congress again amended the federal anti-kickback statute to provide for statutory exceptions known as "safe harbors" for specified transactions, and also to give the Secretary of the Department of Health and Human Services (HHS) the power to exclude violators from federal and state health programs.

In 1996, Congress amended the anti-kickback statute as part of the Health Insurance Portability and Accountability Act of1996 (HIPAA). With HIPAA, Congress extended the anti-kickback statute to all federal health programs, strengthened penalties for healthcare fraud violations, included an additional safe harbor, and established a fraud and abuse control program through the OIG of the Department of Health and Human Services. To date, the OIG has listed over twenty safe harbors in the regulation that protect physicians from the statute. Once again, in 2003, Congress added new safe harbors as part of the Medicare Prescription Drug, Improvement, and Modernization Act. The OIG added the two most recent safe harbors in 2006.

2. Current Federal Anti-Kickback Statute

The federal anti-kickback statute prohibits knowingly and willfully soliciting or receiving any remuneration in return for either referring an individual for any service compensated under a federal healthcare program or purchasing any item compensated under a federal program. The statute also prohibits offering or paying any remuneration to any person for the same reasons Anyone who violates the statute can be charged with a felony. The statute also lists a series of eight safe harbors to which the above provisions do not apply." (Citations excluded).

### (2) THE *MENS REA* QUANDRY

The 9th Circuit and the 10th Circuit use a heightened *mens rea* requirement. Those Courts hold that the *mens rea* for alleged violators is that: (1) they knew that the statute prohibits offering or paying remuneration to induce referrals, and (2) that they performed the prohibited conduct with the specific intent to disobey the statute. *Hanlester Network v. Shalala*, 51 F.3d 1390, 1400(9th Cir. 1995); and, *United States v. McClatchey*, 217 F.3d

823, 834-35(10th Cir. 2000). *See also, Robert Wood Johnson Univ. Hosp. Inc. v. Thompson*, Civil Action No. 04-142, 2005 U.S. Dist. Lexis 8498(D.N.S. April 15, 2004)(Third Circuit) (also 2004 WL 3210732).

Other Circuits, including the 5th Circuit have failed to follow the heightened *mens rea* standard. The 8th Circuit interpreted the *mens rea* requirement as requiring that the defendant knew his or her conduct was wrongful, rather than requiring that he or she knew their actions violated a known legal duty. *United States v. Jain*, 93 D.3d 436(8th Cir. 1996). A district court in the 6th Circuit, citing *Jain*, interpreted the term willful as the "purpose to commit a wrongful act." *United States v. Neufeld*, D.O., 908 F.Supp. 491, 497(D. Ohio 1995).[1]

In *United States v. David*, 132 F.3d 1092(5th Cir. 1998), the term willfully was described, as it was described in the charge in this case, as, "means that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is to say with bad purpose either to disobey or disregard the law."

Meanwhile, the United States Supreme Court has interpreted the word "willfully" under a heightened *mens rea* requirement in reference to complex statutory schemes, including the anti-structuring law. *Ratzlaf v. United States*, 510 U.S. 135(1994). In *Ratzlaf* the Supreme Court concluded that "willfully" requires both knowledge of the law itself and the specific intent to commit the crime. *Id.* at 141. However, in *Bryan v. United States*, 524 U.S. 184, 196(1998) the United States Supreme Court interpreted "willfully"

---

[1] Interestingly this case also held that whether a personal contracts safe harbor applied to create an entrapment defense by estoppel was a jury question.

as "with knowledge that the conduct is unlawful." The 11th Circuit applied this definition standard to the Federal Anti-Kickback statute in *United States v. Stark*, 157 F.3d 833, 836(11th Cir. 1998).

**(3) CFR**

No matter what the *mens rea* standard used, the OIG has promulgated over twenty safe harbors that list payment arrangements treated as exceptions to the federal illegal remuneration statute. 42 C.F.R. §1001.952. Further, not every arrangement that does not fully comply with a safe harbor is suspect under the illegal renumeration statute. *See,* Medicare and State Health Care Programs: Fraud and Abuse, 64 Fed.Reg. 63, 518, 63, 521(Nov. 19, 1999). *See also*, Linda A Baumann, Navigating the Safe Harbors to the Anti-Kickback Statute, 12 Health L. 1, 3(2000), and Lissa Bourjolly & Erin Monk, Health Care Fraud, 4, 1, Am Crim. L. Rev. 751, 766-67(2004).

One such safe harbor is the "employee" safe harbor. 42 C.F.R. §1001.952(i). The issue is, what is the bona fide employment relationship.

**(4) GOVERNMENT TRIAL BRIEF LISTS THE WRONG STANDARD**

First of all, the Government trial brief, Dkt. No. 142, ignores other safe harbors, such as agency, (or under-severed community), and only attempts to define employee. It also disingenerously attempts to ignore State of Texas cases such as *New Boston General Hospital, Inc. v. Texas Workforce Commission*, 47 S.W. 3d 34(Tex.App. –Texarkana 2001, no pet.). That case held in a situation similar to the present case that the employee had an employment relationship and a percentage commission agreement with the

employer, and that the commission agreement came within the safe harbor exception to the anti-kickback statutes.

The Government trial brief, Dkt. No. 142, also ignores the definition of "Employment" at 26 U.S.C. §3121(b), which states in part:

> "For purposes of this chapter, the term "employment" means any service, of whatever nature, performed
>
> (A) by an employee for the person employing him, irrespective of the citizenship or residence of either,
>
> > (i) within the United States, or
> >
> > (ii) on or in connection with an American vessel or American aircraft under a contract of service which is entered into within the United States or during the performance of which and while the employee is employed on the vessel or aircraft it touches at a port in the United States, if the employee is employed on and in connection with such vessel or aircraft when outside the United States, or

This definition of "Employment" is broader than that found at 26 U.S.C. §3121(d)(2). However, even under §3121(d)(2), and the common law, the Government brief ignores the fact that the key factors listed in Dkt. No. 142, is a <u>nonexhaustive</u> criteria for identifying the master servant relationship. *Nationwide Mut. Ins. Co. v. Dardin*, 503 U.S. 318, 323(1992); CF RESTATEMENT (Second) of Agency §220(2)(1958). Further, Rev. Rul. 87-41, 1987-1 Cum.Bull. 196, 298-299 sets forth 20 factors, not 12 as in Dkt. No. 142, as <u>GUIDES</u> in determining whether an individual qualifies as a "common-law employee." *Id.* Further, all the factors must be weighed, and no one factor is determinative. *NLRB v. United Ins. Co. of America*, 390 U.S. 254, 258(1968).

It is especially important that the Supreme Court has held that no one factor is determinative. Such language makes the issue of "employee" a question to be determined by a jury; by the ultimate fact finder. In the present case there was specific, direct testimony that the sales personnel were employees. The issue should have gone to the jury.

While the 5th Circuit has held the safe harbor exception to be an affirmative defense[2] which requires evidence sufficient for a reasonable jury to find in Defendant's favor. *United States v. Job*, 387 F.App'x 445, 455(5th Cir. 2010), nevertheless:

> "As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor"

*Matthew v. United States*, 485 U.S. 58, 63(1988); *Stevenson v. United States*, 162 U.S. 313(1896).

In the present case such request for a jury instruction was timely made. In *Job* no request for an instruction was made at trial. *Job* at 455.

In the present case there was sufficient evidence:

(1) Carla Parnell testified that all sales personnel had signed employment contracts which allowed commission for sales.
(2) Victoria Johnson testified that she told the agents that she was an employee of Yellabone.
(3) The agents themselves listed Victoria Johnson as a former employee of Yellabone. (*See also*, Government Dkt. No. 118. Paragraph 6, which alleges withholding was taken out from employee paychecks).
(4) Yellabone accounting tax records were introduced showing withholding was taken out of the commissions – at least as to Victoria Johnson.
(5) The Government agent who interviewed Ms. Nowlin in 2004 knew exactly how sales personnel were paid and their names, and there was no

---

[2] Counsel for Defendant urges that such holding is statutorily wrong. As the exception is statutory, the Government, under constitutional due process, should be required to prove the exception does not apply. U.S. Const. 5th Amendment.

      complaint; no acknowledgment of her treatment of sales personnel as employees. (This is an estoppel argument. *See*, *United Staets v. Neufeld,* D.O. 908 F.Supp. 491, 497 (D. Ohio 1995).

(6) Other Government agents in their reports listed the sales representatives as employees.
(7) Yellabone had the right to determine the actual line of product to be sold by the sales personnel, and created the handouts and advertisements actually used.
(8) The source of the sales documents was from Yellabone.
(9) The location of the work was the sales area of Yellabone; indeed they had to go on Yellabone sales trips.
(10) The sales personnel involved had been with Yellabone a lengthy period of time.
(11) At least Victoria Johnson admitted that she also sold Sprint cellular phones for Yellabone; an additional project.
(12) While as sales personnel the employees had great discretion over when and how long to work; but, if they did not work, they did not get paid.
(13) The method of payment was normally by Yellabone check.
(14) There is no testimony that any sales person could hire an assistant to help them.
(15) The work was considered part of the regular business of Yellabone, and every Government agent was told this. No one believed that they were violating the law with the arrangement.
(16) The hiring party, Yellabone was in business, and the Government proved that up at trial.
(17) The sales personnel had the same benefits as all other employees under the trial record – NONE.
(18) Whether or not Ms. Parnell actually paid the withholding taxes, they were withheld. Further, as the accounting became entangled, an accountant was retained to complete the accounting books and to insure taxes were properly paid.
(19) From the agents interviews with Ms. Nowlin, it is clear that she believed all sales personnel had signed the written employment contract, were treated as employees, and that Yellabone was in compliance with safe harbor provisions.
(20) None of the outside sales force was indicted or even told that what they had done was illegal. The fact that the employment arrangement is not full time is not fatal.

This is <u>not</u> a case like *Job.* Many Americans work more than one job; and many work part time jobs. They are still employees.

The evidence of employee and/or agency, (or of under-served community), was sufficient for the Court to present a Safe Harbor instruction to the jury in the Court's charge. Without such an instruction, irreversable harm was done to this Defendant's defense, and such harm leaked over to all counts of conviction. It was an abuse of discretion not to give a Safe Harbor instruction, and a New Trial should be granted.

### B. USE OF THE TERM "KICKBACK" IN THE INDICTMENT AND THE CHARGE

In *United States v. Porter*, 591 F.2d 1048 (5th Cir. 1979) the 5th Circuit applied as vary narrow interpretation of the term "kickback." The *Porter* court held that as to the language in the act before 1977 that a laboratory, having received a lawful fee under the Medicare program, and who shared the fee with the doctor who had referred the specimen to the lab did not establish bribery or "kickbacks" within the meaning of the then existing statute; and were not a part of an 18 U.S.C. §371 conspiracy to defraud the Government.

The Porter court held that the acts alleged in the indictment did not constitute "kickbacks" within the meaning of 42 U.S.C. §1395nn(b) (the predessor statute). In ordinary parlance, a kickback is the secret return to an earlier possessor of part of a sum received. As the Second Circuit in *United States v. Zacher*, 586 F.2d 912 (2nd Cir. 1978), interpreted the term in a similar statute, a kickback "involve(s) a corrupt payment or receipt of payment in violation of the duty imposed by Congress on providers of services to use federal funds only for intended purposes and only in the approved manner." 586 F.2d at 916. Other federal statutes which prohibit the offer, acceptance, or solicitation of

kickbacks are aimed at preventing the corruption of the judgment of a public official or of some individual who has a specific duty imposed upon him by the Congress. The *Porter* 5th Circuit therefore concluded that no crime involving kickbacks was charged or proven.

While Congress amended the statute in 1977 by substituting the term "any remuneration" for the terms "rebate," "bribe," and "kickback;" by increasing the violation from a misdemeanor to a felony; by increasing the possible fine to $25,000 and the possible length of imprisonment to five years; and by excluding two business practices from the scope of the statute, i.e., the practice of discounts and price reductions and payments made to employees under a bona fide employment relationship. *See* Medicare–Medicaid Anti–Fraud and Abuse Amendments, Pub.L. No. 95–142, § 4(b)(1), 91 Stat. 1175, 1180–81 (1977). As explained in the legislative history, the statutory amendments were based on a general agreement "that the existing language of these penalty statutes is unclear and needs clarification." H.R.Rep. No. 95–393(II), at 53 (1977), *reprinted in* 1977 U.S.C.C.A.N. 3039, 3055. The Office of the Inspector General (OIG) of HHS has explained that the exceptions for certain business practices were prompted by the concerns of "health care providers that many relatively innocuous, or even beneficial, commercial arrangements are technically covered by the statute and are, therefore, subject to criminal prosecution" because "the statute on its face is so broad." Medicare and Medicaid Programs; Fraud and Abuse OIG Anti–Kickback Provisions, 54 Fed.Reg. 3088, 3088 (Jan. 23, 1989) (explaining the statutory background for proposed safe harbor regulations). **The legislative history also specifically states that "an amount paid 'by an employer to an employee for employment in the provision of**

**covered items or services' is exempt" from the definition of a kickback**. H.R. Conf. Rep. 95–673 (1977), at 41, *reprinted in* 1977 U.S.C.C.A.N. 3113, 3115. It is this employee payment exception that is one of the safe harbor items at issue here. *See* 42 U.S.C. § 1320a–7b(b)(3)(B) (2000). *See also*, *State v. Hardin*, 938 So.2d 480 (Sup. Ct. Fla. 2006), *cert. denied*, 550 U.S. 903 (2007).

However, in the present case the Government persisted in using the term "kickback" in both the indictment and in the charge to the jury. Thus, the Government actually took the statute back to its pre-amendment condition, and *Porter* still fully applies. The evidence adduced at trial did not rise to the level of a "kickback," did not legally adduce a crime. Therefore, an acquittal should be entered as to Count 6, and a new trial granted as to all remaining counts of the indictment.

### C. INSUFFICIENCY OF THE EVIDENCE

The evidence is woefully lacking in proof that NOWLIN had knowledge or the specific intent to conspire or aid and abet Carla Parnell or anyone else to either conspire to commit health care fraud or aid and abet to commit health care fraud or to defraud the government. The evidence is also insufficient that NOWLIN had the specific intent to conspire or aid and abet the paying of "kickbacks" as that term is legally defined. Indeed, the testimony from all witnesses on the stand was that they all believed the way their compensation was arranged was legal. Even Carla Parnell testified to this. The insufficiency of the evidence as to NOWLIN is reason, if the Renewed Rule 29 Motion is not granted, to grant a new trial. (The Renewed Rule 29 Motion is incorporated and fully incorporated herein).

## D.  REMOVAL OF EXHIBITS 18 AND 19

Furthermore, upon Government urging, Defendant's Exhibits 18 and 19, 42 C.F.R. §1001.952(i) and 26 U.S.C. §3121, were admitted as exhibits and discussed before the jury. This occurred after Safe Harbor was discussed in voir dire and in opening statements. That the Court did not allow those exhibits to go back to the jury room, did not place a safe harbor instruction into the jury instruction, and thus declined safe harbor argument during closing argument, at the very least confused the jury, and at the worst may have been taken by the jury as the equivalent of a summary judgment against defendant as to the issue.

This is particularly true as defendant's willful intent was NOT TO VIOLATE the law. If her intent was to stay within the law. Thus, without the safe harbor instruction the jury could have been left with the belief that there was only evil intent. Thus, a new trial should be granted in the interest of justice.

## E. LACK OF CORROBORATION OF THE TESTIMONY OF CARLA PARNELL

In reality, the only witness that placed NOWIN into any alleged conspiracy was the witness CARLA PARNELL. Not only was she an indicted plea bargainer awaiting sentencing, but her over-all credibility was zero. While there is corroborating evidence that a crime was committed, there is no evidence to support Ms. Parnell's assertion that Ms. NOWLIN told her either how to commit the health care crimes or that Ms. Nowlin agreed to participate. As to the alleged evidence of the "Quick Way," such is not alleged in the indictment, is at variance to the indictment, and which allegation caused

irreversible harm under Rule 403, for which counsel moved for mistrial, and is uncorroborated except by the unindicted friend of Carla Parnell, Victoria Johnson, who besides having a criminal history herself, did not mention same in three previous interviews. Additionally, such allegations are outside of the statute of limitations in that Government Dkt. No. 118, paragraph 5, states that such occurred in 1999.[3]

The jury obviously placed more weight on Ms. Parnell's testimony than the law allows; especially when there is no corroborating evidence. Furthermore, Ms. Victoria Johnson, if she is to be believed, only corroborated the "quick way," which she had not mentioned in any previous interview. The Court viewed the witnesses, judged the credibility, and because of the lack of sufficient, credible evidence to support Ms. Carla Parnell's testimony; the Court should grant NOWLIN a New Trial.

### F. PROSECUTOR'S INFRINGEMENT ON DEFENDANT'S FIFTH AND SIXTH AMENDMENT RIGHTS

The Special Assistant United States Attorney objected that Defendant had not taken the witness stand, and such was a violation of Defendant's right not to testify.[4] The prosecution again violated these rights during closing argument. A verbal motion for Mistrial were lodged by the Defense each time. U.S. Constitution Amendments 5 and 6.

### G. WITNESS ISSUES

The Government contacted Defense witness Linda Binford, who testimony is believed would have rebutted Carla Parnell's assertion that all of the billing codes came

---

[3] And, if the alleged event is not the 1999 event detailed in Government Dkt. No. 118, then it was not properly revealed pre-trial, and a new trial should be granted for that reason.
[4] The trial transcript has been ordered so that the actual language can be correctly cited.

from Ms. Nowlin as Ms. Parnell would call Ms. Binford for code numbers. After the Government contact, Ms. Binford would not talk to the defense private investigator.

### H. MISAPPLICATION OF THE COURT'S CHARGE

The Court gave a *Pinkerton* charge at page 13, and while the charge specifically limited the instruction to Counts 2- 5, same colored Count 7. The jury could easily have been confused and applied page 13 equally to Count 7. Furthermore, Count 7 may have been, in any event, tainted and prejudiced by the jury's findings as to Counts 1 – 6. For this reason, a New Trial should be granted as to Count 7.

### I. SUMMARY CHARTS

The allowance of summary charts by the Government that the Government had neither tendered to the defense nor created pre-trial was harmful error. Ms. Patel's charts, in particular, are grounds for a new trial for if such had been tendered pre-trial, Defendant would have requested a rebuttal accountant. Much, if not most of the "cash" went to legitimate vendors, the receipts of which were actually in evidence. Thus, Ms. Patel's summary inferences were not only wrong but prejudicial. Likewise, Special Agent Christine Finnegan presented a summary chart that included her "notes to herself" and did not summarize but used the word "FRAUD" in several instances. This was after Defense counsel had asked that the word "fraud" be removed from the heading. While this may have been inadvertent such would not have occurred if the summary exhibits actually used had been tendered pre-trial. A New Trial should be granted.

## J. REFUSAL OF OTHER PROFFERED DEFENSIVE INSTRUCTIONS

The Trial Court denied Defendant's proffered instructions as to good faith, multiple conspiracies, violation of a regulation not being a violation of a criminal law, witness having a criminal history, and Safe Harbor. A defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his or her favor. *Mathews v. United States*, 485 U.S. 58, 63 (1988).

The Government spent several days going over the Medicare/Medicaid Applications of Yellabone and linking them to Ms. Nowlin. This is **NOT** a strict liability case, and the jury was prejudicied by this presentation. The owner is not liable for the independent crimes of the employee. Thus, the refusal of the requested instruction was error.

The issue of multiple conspiracies was raised by the evidence, and Carla Parnell could have been in an independent conspiracy with her family members or others. The charge had sufficient evidence to go to the jury, as did the instruction over criminal conviction as to Ms. Victoria Johnson.

The Safe Harbor issue is discussed above, and while a case supports the Court's position on Good Faith, *United States v. Davis*, 132 F.3d 1092 (5th Cir. 1998), in the present case, because of the Government's insistence on civil/administration violations for criminal intent, the lack of a Safe Harbor charge, the mental state of Defendant in the relevant time, the importance of intent in this case, and the fact that through Government interviews Ms. Nowlin's Good Faith, especially as to Safe Harbor, was in evidence, made

it an abuse of discretion not to include a Good Faith instruction in the Jury Charge. A New Trial should be granted.

### K. COUNT 1 AND COUNT 6

Defendant again urges that Count 6 is multiplictors of Count 1 and indeed is a lesser included offense of Count 1. Defendant hereby incorporates and adopts her Motion to Dismiss Indictment Count 1 and 6 for multiplicity, Dkt. No. 76, and fully incorporates same into this Motion for New Trial. Defendant urges that allowing both counts to go to the jury inproperly bolstered the Government's case. Thus, a New Trial should be granted.

### L. DAUBERT HEARINGS

The Trial Court did not allow *Daubert* hearings as to the alleged experts of the Government. As to this argument, the Defendant incorporates and adopts her previously filed Request for Daubert Hearing, Dkt. No. 65, and her Memo in Support, Dkt. No. 81, and her Motion to Strick or to Compel Reports, Dkt. No. 74. The Court also did not compel reports. Furthermore, the Government used "summary" witnesses such as Ms. Patel to give accounting opinions that were neither vetted before trial, nor was the witness shown to be able to make such opinions. Because of this, a New Trial should be granted.

### M. UNCONSTITUTIONALITY OF STATUTE AS APPLIED

The Illegal Remuneration Statute is Unconstitutionally vague and overbroad as applied in this case in violation of both the 1st Amendment right of free speech and association and under the 5th Amendment due process clause. The jury note 1, Dkt. No.

151, shows how confused the jury was over the term "kickback" as used in the charge. Defendant has a 1st Amendment right to compensate her employees in a manner to which they agree. Further, Defendant has a constitutional 5th Amendment due process right to know what the term "kickback" means. As such, a New Trial should be granted.

## CONCLUSION

YOLANDA NOWLIN'S Motion for New Trial should be granted, and the Court should grant such other relief as this Court deems just.

Respectfully submitted,
*/s/ Michael M. Essmyer, Sr.*
MICHAEL M. ESSMYER, Sr.
Essmyer & Daniel P.C.
5111 Center Street
Houston, Texas  77007
(713)869-1155 Telephone
(713)869-8659 Facsimile
messmyer@essmyerdaniel.com

**Attorney for Defendant,
YOLANDA NOWLIN**

## CERTIFICATE OF SERVICE

This is to certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this instrument via the USDC Southern District's CM/ECF system per the Local Rules on this the 18th day of September, 2013.

*/s/ Michael M. Essmyer, Sr.*
Michael M. Essmyer, Sr.